UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                                                             :
DOS BOWIES, LP, et al.,                                      :
                                          Plaintiffs,        :
                                                             :        20 Civ. 2479 (LGS)
                      -against-                              :
                                                             :        **OPINION AND ORDER**
MICHAEL ACKERMAN, et al.,                                    :
                                         Defendants.  :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Thirty-eight Plaintiffs bring this action alleging securities fraud, fraudulent inducement,

breach of fiduciary duty, civil conspiracy to commit fraud, negligence, conversion and unjust

enrichment.  Defendants James A. Seijas and Dr. Quan Tran ("Defendants") move to dismiss the

Corrected Complaint ("Complaint") for failure to state a claim under Federal Rules of Civil

Procedure 12(b)(6), 8(a) and 9(b).  For the reasons stated below, the motion is granted.

I.      BACKGROUND

The following facts are taken from the Complaint and are assumed to be true for

purposes of this motion.  *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959

F.3d 509, 512 (2d Cir. 2020).

Defendants Ackerman, Tran and Seijas controlled two entities, Q3 Holdings, LLC

("Q3H") and Q3 I, LP ("Q3I") (collectively, the "Q3 Companies").  Defendants are members of

the management team and equal co-owners of Q3H, which is the sole general partner of Q3I.

Ackerman currently faces civil and criminal charges for securities fraud and money laundering,

and Ackerman and the Q3 Companies face civil claims for violation of the Commodity

Exchange Act and Securities and Exchange Commission regulations.  Default judgment was

entered against Ackerman in this action on September 30, 2020.

In June 2017, Defendants created a trading club (the "Q3 Club") for trading of cryptocurrencies by depositing $15,000 of their personal funds into a trading account.  In July 2017, Defendants began seeking investors for the Q3 Club through social media and word of mouth.  In July 2017, Defendant Tran posted in a Facebook group that he had joined a club in which members pooled their funds to trade cryptocurrencies, and subsequently created a Facebook group where Plaintiffs and Defendants discussed investment in the Q3 Companies and Tran posted brokerage statements containing falsified monthly returns.  Capital contributions from Plaintiffs were made to a New York bank account and were then directed to an offshore cryptocurrency trading account (the "Q3 Trading Account").

In July 2018, Defendants formed Q3I, and from November 1, 2018, to December 2019, offered Plaintiffs the opportunity to invest in Q3I.  Defendants marketed this investment with a Private Placement Memorandum stating that funds would be used to trade cryptocurrencies using a proprietary cryptocurrency trading algorithm (the "Algorithm"), and that Q3H had successfully traded cryptocurrencies for the past 24 months.  Defendants told Plaintiffs that the Q3 Companies were consistently profitable and provided fraudulent account statements and screenshots purporting to show more than $200 million under management, when in fact Defendants never had more than $6 million invested in cryptocurrencies.  Defendants falsely told Plaintiffs that Ackerman could not transfer money in or out of the cryptocurrency trading account without authorization from Tran or Seijas.

Tran disseminated such misrepresentations to Plaintiffs via Facebook through December 2019.  In late 2019, Seijas made false statements to Plaintiff Dos Bowies via a dinner conversation with Dos Bowies' general partner Andrew Walter, including, as relevant here: (1) that the Q3 Companies had earned consistent profits of .5% daily and 13-15% monthly since

August 2017; (2) these profits were split 50-50 between investors and Defendants; (3) the Algorithm had a 75% success rate and a "mathematically guaranteed loss ratio that is below 25%"; (4) that the Q3 Companies had not "had a negative day in 6 months" and (5) that Defendants had "mathematically determined a strategy that allows [them] to gain more than [they] lose in any life cycle."

Defendants collected approximately $3.9 million to invest from the thirty-eight Plaintiffs and approximately $33 million from more than 150 investors in total. Defendants did not invest the majority of those funds in cryptocurrencies as claimed, but instead transferred investor funds to personal accounts as vaguely disclosed licensing fees while paying out earlier investors with the contributions of later investors.

The Complaint alleges violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5(a), (b) and (c) with respect to Tran (Count I) and Seijas (Count II). *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. The Complaint alleges fraudulent inducement (Count III), breach of fiduciary duty (Count IV), civil conspiracy to commit fraud (Count V), negligence (Count VI), conversion (Count VII) and unjust enrichment (Count VIII) as to all Defendants.

## II.      STANDARD

### A.      Pleading Requirements under Federal Rule of Civil Procedure 8(a)

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). To withstand a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

### B.  Pleading Requirements for Securities Fraud Claims

To state a claim under Section 10(b) and Rule 10b-5, "a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *Setzer v. Omega Healthcare Inv'rs, Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *ATSI Commc'ns, Inc.*, 493 F.3d at 105).

"Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the [Private Securities Litigation Reform Act ('PSLRA')] and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." *Emps. Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 304 (2d Cir. 2015) (internal quotation marks omitted); *accord Lefkowitz v. Synacor, Inc.*, No. 18 Civ. 2979, 2019 WL 4053956, at *5 (S.D.N.Y. Aug. 28, 2019).  The heightened pleading standard of Rule 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Setzer*, 968 F.3d at 212.  "The complaint must detail the specific statements

that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). "The primary purpose of these requirements is to afford [the] defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 94 (2d Cir. 2018) (alteration in original) (internal quotation marks omitted).

"The PSLRA expanded on the Rule 9(b) pleading standard, requiring that securities fraud complaints specify each misleading statement; that they set forth the facts on which [a] belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); 15 U.S.C. § 78u-4); *accord Woolgar v. Kingstone Cos., Inc.*, No. 19 Civ. 5500, 2020 WL 4586792, at *10 (S.D.N.Y. Aug. 10, 2020). "For an inference of scienter to be strong, 'a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *ATSI Commc'ns, Inc.*, 493 F.3d at 99 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007)); *accord In re Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 734 (S.D.N.Y. 2018). A plaintiff may satisfy the scienter requirement by "alleging facts (1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Stratte–McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015) (internal quotation marks omitted); *accord Neurotrope*, 315 F. Supp. 3d at 734.

### III.    DISCUSSION

#### A.  Securities Fraud Claims

Defendants argue that the Complaint: (1) does not adequately allege reliance on Defendants' misrepresentations and omissions and (2) fails to plead fraudulent misrepresentations and scienter by Defendants with the specificity required under Rule 9(b) and the PSLRA.

#### 1.  Reliance

Defendants claim the Complaint contains no allegations that Plaintiffs "purchased or sold any security based on the statements purportedly made by" Defendants Seijas and Tran.  But the Complaint alleges that "Plaintiffs relied on Defendants Ackerman and Tran's misrepresentations in making their decisions to invest" and lists specific misrepresentations relied upon.  The Complaint also alleges that "Plaintiffs relied on Defendant Seijas's misrepresentations in making their decisions to invest" and lists specific misrepresentations relied upon.  The Complaint adequately alleges reliance by Plaintiffs.

Defendants claim that Seijas's late 2019 statements to Walter of Dos Bowies could not have been relied on by Plaintiffs since "almost every named plaintiff ceased investing with the Q3 Companies by October 2019."  This argument is unpersuasive because although many Plaintiffs ceased investing in the summer of 2019, several continued into late 2019, and the Complaint alleges that Seijas expected that Walter would disseminate his misstatements to Plaintiffs.  Defendants also claim the Complaint does not allege reliance on Tran's social media statements.  That claim is belied by the Complaint's express statement that Plaintiffs relied on Tran's misrepresentations to invest in Q3I, which were made on social media.

### 2.  Particularity and Scienter

Defendants claim the Complaint's allegations about Seijas and Tran's statements lack sufficient particularity under Rule 9(b) and the PSLRA.

In numerous places, the Complaint alleges misrepresentations made by "Defendants" collectively: (1) that 70% of the invested funds were kept as cash and 30% used to trade; (2) that Ackerman could not unilaterally transfer investor funds from the Q3 Trading Account; (3) that the funds would be used to invest in cryptocurrencies; (4) that the Algorithm created consistent profit with minimal risk and (5) that profits were 15% or more.  Generally, "[s]weeping references to the collective fraudulent actions of multiple defendants will not satisfy the particularity requirements of Rule 9(b)."  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 579–80 (2d Cir. 2005) (quotations omitted); *accord Trahan v. Lazar*, 457 F. Supp. 3d 323, 342 (S.D.N.Y. 2020) ("[A] complaint may not rely upon blanket references to the acts of all of the defendants without identifying the nature of each defendant's participation in the fraud." (quotation marks omitted)).  Because the Complaint's allegations of Defendants' collective fraudulent misrepresentations do not "inform each defendant of the nature of [his] alleged participation in the fraud," they lack the required particularity under Rule 9(b).  *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 172 (2d Cir. 2015) (quotation marks omitted); *accord In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 213 (S.D.N.Y. 2019).

As to Tran, the Complaint alleges that Tran posted the following misstatements to a Facebook group including Plaintiffs "during the Relevant Time Period" of July 2017 through December 2019: (1) brokerage statements containing false monthly returns; (2) that the Q3 Companies were consistently profitable; (3) fraudulent account statements containing falsified

account balances and monthly totals; (4) fraudulent screenshots showing $200 million under management; (5) that 70% of the invested funds were maintained as cash and (6) that Ackerman could not unilaterally transfer investor funds from the Q3 Trading Account.  These allegations "detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 889 F.3d at 124 (2d Cir. 2018).  But they do not "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Anschutz Corp.*, 690 F.3d at 108 (emphasis added); *accord Woolgar*, 2020 WL 4586792, at *10.  Although it alleges that Tran "intentionally, knowingly or recklessly" sought to deceive investors, the Complaint's factual allegations as to Tran's state of mind when he made the alleged misrepresentations are too sparse to create a "strong inference" of scienter.  The only factual allegation in the Complaint supporting the inference that Tran intentionally, knowingly or recklessly made a misrepresentation is his statement to investors that Ackerman could not unilaterally transfer funds from the Q3 Trading Account, despite Ackerman possessing the only log-in credentials for that account.  The Complaint pleads no other facts supporting the inference that Tran's misstatements were made with scienter, or that he believed them to be false.  Nor do the Complaint's limited factual allegations as to scienter demonstrate any motive for Tran to commit fraud or constitute strong circumstantial evidence of conscious misbehavior or recklessness on his part.  *See Stratte–McClure*, 776 F.3d at 106; *accord Neurotrope*, 315 F. Supp. 3d at 734. Accordingly, the Complaint does not allege Tran's state of mind with the particularity required by the PSLRA.

As to Seijas, the Complaint alleges the following misstatements:  (1) that Plaintiffs were entitled to 50% of trading profits; (2) the specific contents of Seijas's conversation with Walter

of Dos Bowies in late 2019, in which he made numerous claims about the performance of the

Algorithm and the Q3 Companies; (3) that Seijas would run cryptocurrency trading when

Ackerman was not available and (4) that Ackerman could not unilaterally transfer investor funds

from the Q3 Trading Account.  Although these allegations are more specific than for Tran -- as

the Complaint purports to recite verbatim numerous fraudulent statements by Seijas -- the

Complaint again fails to plead facts supporting a strong inference that Seijas "intentionally,

knowingly or recklessly" made fraudulent representations.  The only fact supporting such an

inference is that because Ackerman possessed the only log-in to the Q3 Trading Account, Seijas

knew that he could not manage cryptocurrency trading while Ackerman was away and that

Ackerman could unilaterally transfer investor funds from that account.  The Complaint

otherwise pleads no facts as to scienter for the majority of Seijas's statements regarding the

performance of the Q3 Companies and the Algorithm.  The Complaint lacks sufficient

particularity as to Seijas's state of mind at the time of the allegedly fraudulent statements.

### B.  Common Law Claims

The Complaint asserts that the securities law claims in Counts I and II can be adjudicated

based on federal question jurisdiction.  *See* 29 U.S.C. § 78j(b); 28 U.S.C. § 1331.  For the other,

state-law, causes of action in Counts III to VIII, the Complaint relies on supplemental

jurisdiction.  *See* 28 U.S.C. § 1367.

Because the federal claims are dismissed, the Court declines to exercise supplemental

jurisdiction over the remaining state law claims.  A district court "may decline to exercise

supplemental jurisdiction over a claim" once it has "dismissed all claims over which it has

original jurisdiction."  28 U.S.C. § 1367(c).  "[I]n the usual case in which all federal-law claims

are eliminated before trial, the balance of factors . . . will point toward declining to exercise

jurisdiction over the remaining state-law claims." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *accord Krechmer v. Tantaros*, 747 Fed. App'x. 6, 10 (2d Cir. 2018) (summary order); *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) ("[O]ur circuit takes a very strong position that state issues should be decided by state courts."). This case is still in its early stages -- fact discovery has not begun, and no dispositive motions, other than the present one, have been briefed. The exercise of supplemental jurisdiction over the state-law claims is not justified.

### C.  Leave to Replead

Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a). "However, where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999); *accord Olson v. Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020). Leave to amend also may be denied where the plaintiff "fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014).

The Complaint is dismissed, but Plaintiffs may seek leave to replead within twenty-one days of the date of this Opinion. Should Plaintiffs seek leave to replead, they shall (1) file a letter motion not to exceed three pages explaining how a First Amended Complaint ("FAC") would sustain a showing of particularity or scienter consistent with this Opinion and (2) append to the letter motion a draft of the proposed FAC marked to show changes from the Complaint. Within seven days of the filing of any such letter motion, Defendants shall file a letter response

not to exceed three pages.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is respectfully directed to close the motion at Docket No. 38.

Dated: January 29, 2021
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE